D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JUSTIN BASILIO,

                Plaintiff,

      -against-

NASSAU COUNTY, POLICE OFFICERS #1-4 &
EMT #1, FRANKLIN HOSPITAL, DR. EMANUEL
H. SAINT JEAN,

                Defendants.
------------------------------------------------------------X

ORDER
13-CV-4120 (SJF)(ARL)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ NOV 21 2013 ★

LONG ISLAND OFFICE

FEUERSTEIN, District Judge:

I.    Introduction

Pending before the Court is the complaint of *pro se* plaintiff Justin Basilio ("plaintiff") against the defendants, Nassau County, four unidentified Nassau County police officers, an unidentified Nassau County EMT, Franklin Hospital, and Dr. Emanuel H. Saint Jean pursuant to 42 U.S.C. §§ 1981, 1983 and 1985. Notwithstanding plaintiff's payment of the filing fee, his complaint is *sua sponte* dismissed for the reasons that follow.

II.    The Complaint

According to the complaint, on July 25, 2012, plaintiff's father called the police to the family home "due to a verbal argument." Compl., ¶ 1. Plaintiff alleges that although his father told the police he did not want to press charges against the plaintiff, the police officers entered the home, with "his gun drawn," police officer # 1 "ordered the plaintiff to come out of the house." *Id.* at ¶¶ 3-4. Plaintiff complied and was then handcuffed by police officer # 2. *Id.* at ¶¶ 4-5. The officers advised plaintiff he was being taken to the hospital and plaintiff told the officers that he did "not agree" with that decision. *Id.* at ¶ 8. According to plaintiff, the officers "proceeded to pick up the plaintiff . . . and drag him to the police ambulance." *Id.* at ¶ 10.

Plaintiff was brought to Franklin Hospital where he overheard police officers describing that they used "physical jujitsu" and "mental jujitsu" to "bring down the plaintiff." *Id.* at ¶ 14. Once inside a room at the hospital, a nurse drew blood and inserted an intravenous line, to which plaintiff did not consent. *Id.* at ¶ 18. Plaintiff mother, who was present and she was "seemingly unaware as to the gravity of the situation," encouraged him to allow the nurse to proceed. *Id.* Plaintiff claims that he was "compelled to comply because he was under arrest, in the custody of police officers, and blatantly being threatened." *Id.*

While plaintiff was being examined by Dr. Emanuel H. Saint Jean ("Dr. Saint Jean"), plaintiff's mother said to plaintiff, "Why don't you tell the doctor about how the television talks to you?!" *Id.* at ¶ 19.[1] Dr. Saint Jean then asked plaintiff if he is "still hearing the voices," which plaintiff denied. *Id.* Plaintiff alleges that Dr. Saint Jean then grabbed his wrists to "administer a makeshift lie detector test." *Id.* Dr. Saint Jean then told plaintiff he was going to "administer medication" and that he "couldn't send the plaintiff to the psychiatrist without drugging him first." *Id.* Plaintiff was sedated, over objection, and a second blood sample was drawn. *Id.* at ¶¶ 20-23. According to plaintiff, once he became unconscious, he was subjected to "a series of tests" including urinalysis, brain scans and light therapy. *Id.* at ¶ 24. Plaintiff was confined in the hospital's psychiatric ward for the night and released the next day. *Id.* at ¶¶ 25-26.

---

[1]  Plaintiff notes that "[g]iven advances in modern technology it is no longer considered unusual for a person to talk to an electronic device nor does it imply any sort of mental illness. This is common knowledge." *Id.* at ¶ 19.

Several days later, plaintiff requested copies of his medical records from the hospital, which were ultimately provided to plaintiff on October 24, 2012. *Id.* at ¶ 29. On November 26, 2012, plaintiff contacted the Nassau County Police Department's Internal Affairs Office to initiate a complaint against the officers involved with the July 25, 2012 incident. *Id.* at ¶¶ 29-31. According to plaintiff, the officer with whom plaintiff spoke at Internal Affairs stated that the "officers had done nothing wrong . . . and if they had done something wrong, they were right in being 'proactive.'" *Id.* at ¶ 31.

Plaintiff asserts various claims, including false arrest, "assault and battery with a needle," "theft of blood and DNA," "covetous racial discrimination," false imprisonment, conspiracy, obstruction of justice, and violation of plaintiff's Second Amendment rights. *Id.* at 4-8. According to plaintiff, although "the term 'Arms' in the second amendment means guns," "the human mind is, and possibly always has been, the greatest weapon a citizen can bear." *Id.* at 5, Count # 5. Plaintiff concludes that his Second Amendment rights were violated when the doctor "administered those drugs to the plaintiff, causing [him] to be rendered unconscious and lose mental function." *Id.* Plaintiff further contends that "[s]ince it is harder or illegal for a person deemed mentally ill to purchase a gun, the police officer's and the EMT's decision to involuntarily admit the plaintiff without probable cause violates the plaintiff's 2nd Amendment rights." *Id.*

With regard to the "covetous racial discrimination" claim, plaintiff contends that "[i]t is a well known fact that municipalities and even hospitals are extremely hungry for DNA samples for genetic research and to place into their databases." *Id.* at 5, Count # 4. The complaint continues: "[P]laintiff's race comprises .08% of the entire national population which is

3

approximately 2.5 million nationwide. The distribution is even less in Nassau County, N.Y. This makes the plaintiff's DNA sample rare in Nassau County, N.Y. The plaintiff is also a unique and rare test subject in several other ways." *Id.* Plaintiff concludes that the police officers, EMT and Dr. Saint Jean "engaged in covetous racial discrimination" since his "DNA sample is rare and there was clearly no probable cause." *Id.*

As a result of the foregoing, plaintiff seeks to recover a damages award totaling $107 million dollars ($107,000,000) against the defendants. Plaintiff also seeks an injunction enjoining the defendants from "abducting, medicating or incarcerating sane and innocent citizens for the purposes of training experimentation, profit, interrogation or retribution." *Id.* at 7-8. The complaint concludes with the following:

> This is obviously not the whole story. It is also neither the beginning nor the end. However it is certain that, technologically speaking, it is a new world. And in this new world, it is now possible for organizations to perform increasingly complex albeit malicious sting operations. It is important to remain vigilant to the atrocities that will no doubt spring up from these newly acquired abilities and to deter this type of egregious organizational behavior from becoming commonplace. The pieces of this incident have coincidentally fallen closely together and a proactive message of sacrifice has been revealed. However, now more than ever is the time to send back a reactive if not dogged message of recollected liberty. This case raises the question about what society is going to look like both now and in the future, and common sense would suggest that a civilized society is a place where individual citizens are not regularly forced into situations where their actions can either be greatly praised or greatly demonized. . . .

*Id.* at 8.

III. Standard of Review

A district court has the inherent power to dismiss a case, *sua sponte*, if it determines that the action is frivolous or the court lacks jurisdiction over the matter regardless of whether a

4

plaintiff has paid the filing fee. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000); Fed. R. Civ. P. 12(h)(3). "An action is frivolous if it lacks an arguable basis in law or fact – i.e., where it is 'based on an indisputably meritless legal theory' or presents 'factual contentions [which] are clearly baseless.'" *Scanlon v. Vermont*, 423 F. App'x 78, 79 (2d Cir. 2011) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys. The Court is required to read the plaintiff's *pro se* complaint liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and to construe it "'to raise the strongest arguments'" suggested. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), *aff'd* 133 S. Ct. 1659 (2013), (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005).

An action is "frivolous" when "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations and citations omitted). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Gelish v. Social Sec. Admin.*, No. 10-CV-3713, 2010 WL 3780372, at *4 (E.D.N.Y. Sept. 17, 2010). As is readily apparent from the substance of the complaint, the claims in this case "rise to the level of the irrational or the wholly

incredible." *Denton*, 504 U.S. at 33. Even upon a liberal construction, the Court is unable to discern a plausible claim. Given that the untimely allegations in this complaint are the "product of delusion or fantasy," the complaint is dismissed *sua sponte*. *Livingston*, 141 F.3d at 437.

IV. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. However, if amendment would be futile, i.e., if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Construing the plaintiff's complaint liberally, and interpreting it as raising the strongest arguments it suggests, the Court finds that plaintiff's allegations rise to the level of the irrational.

Accordingly, the Court declines to afford plaintiff an opportunity to amend his complaint given that the deficiencies therein cannot be cured by amendment.

VI. Conclusion

For the reasons set forth above, the complaint is dismissed *sua sponte* with prejudice. The Clerk of the Court is respectfully directed to close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

                                      s/ Sandra J. Feuerstein

                                      Sandra J. Feuerstein
                                      United States District Judge

Dated: November 21, 2013
       Central Islip, New York